16 U.S. 281 (____)
3 Wheat. 281
UNITED STATES
v.
PALMER et al.
Supreme Court of United States.

*284 March 13th. Blake, for the United States.
*288 March 14th, 1818. MARSHALL, Ch. J., delivered the opinion of the court.
In this case, a series of questions has been proposed by the circuit court of the United States for the district of Massachusetts, on which the judges of that court were divided in opinion. The questions occurred on the trial of John Palmer, Thomas Wilson and Barney Calloghan, who were indicted for piracy committed on the high seas.
The first four questions relate to the construction of the 8th section of the "act for the punishment of certain crimes against the United States." The remaining seven questions respect the rights of a colony or other portion of an established empire, which has proclaimed itself an independent nation, and is asserting and maintaining its claim to independence by arms.
The 8th section of the act on which these prisoners were indicted is in these words: "And be it enacted, that if any person or persons shall commit, upon the high seas, or in any river, haven, basin or bay, out of the jurisdiction of any particular state, murder or robbery, or any other offence, which, if committed within the body of a county, would, by the laws of the United States, be punishable with death; or if any captain or mariner of any ship or other vessel, shall, piratically and feloniously, run away with *627] such ship or vessel, or any goods or *merchandise, to the value of fifty dollars, or yield up such ship or vessel voluntarily to any pirate; or if any seaman shall lay violent hands upon his commander, thereby to hinder and prevent his fighting in defence of his ship, or goods committed to his trust, or shall make a revolt in the ship; every such offender shall be deemed, taken and adjudged to be a pirate and felon, and being thereof convicted, shall suffer death; and the trial of crimes committed on the high seas, or in any place out of the jurisdiction of any particular state, shall be in the district where the offender is apprehended, or into which he may first be brought."
Robbery committed on land, not being punishable by the laws of the United States with death, it is doubted, whether it is made piracy by this act, when committed on the high seas. The argument is understood to be, that congress did not intend to make that a capital offence on the high seas, which is not a capital offence on land. That only such murder, and such robbery, and such other offence as, if committed within the body of a county, would, by laws of the United States, be punishable with death, is made *289 piracy. That the word "other" is without use or meaning, if this construction be rejected. That it so connects murder and robbery with the following member of the sentence, as to limit the words "murder and robbery" to that description of those offences which might be made punishable with death, if committed on land. That in consequence of this word, the relative "which" has for its antecedent the whole preceding part of the sentence, and not the words "other offences." That section *consists [*628 of three distinct classes of piracy. The first, of offences, which if committed within the body of a county, would be punishable with death. The second and third, of particular offences which are enumerated.
This argument is entitled to great respect on every account; and to the more, because, in expounding a law which inflicts capital punishment, no over-rigid construction ought to be admitted. But the court cannot assent to its correctness. The legislature, having specified murder and robbery particularly, are understood to indicate clearly the intention that those offences shall amount to piracy; there could be no other motive for specifying them. The subsequent words do not appear to be employed for the purpose of limiting piratical murder and robbery, to that description of those offences which is punishable with death, if committed on land, but for the purpose of adding other offences, should there be any, which were not particularly recited, and which were rendered capital by the laws of the United States, if committed within the body of a county. Had the intention of congress been, to render the crime of piracy dependent on the punishment affixed to the same offence, if committed on land, this intention must have been expressed in very different terms from those which have been selected. Instead of enumerating murder and robbery, as crimes which should constitute piracy, and then proceeding to use a general term, comprehending other offences, the language of the legislature would have been, that "any offence" committed on the high seas, which, if *committed in the body of a county, would be punishable [*629 with death, should amount to piracy.
The particular crimes enumerated were, undoubtedly, first in the mind of congress. No other motive for the enumeration can be assigned. Yet, on the construction contended for, robbery on the high seas would escape unpunished. It is not pretended, that the words of the legislature ought to be strained beyond their natural meaning, for the purpose of embracing a crime which would otherwise escape with impunity; but when the words of a statute, in their most obvious sense, comprehend an offence, which offence is apparently placed by the legislature in the highest class of crimes, it furnishes an additional motive for rejecting a construction, narrowing the plain meaning of the words, that such construction would leave the crime entirely unpunished.
The correctness of this exposition of the 8th section is confirmed by those which follow. The 9th punishes those citizens of the United States who commit the offences described in the 8th, under color of a commission or authority derived from a foreign state. Here, robbery is again particularly specified. The 10th section extends the punishment of death to accessories before the fact. They are described to be those who aid, assist, advise, &c., any person to "commit any murder, robbery, or other piracy aforesaid." If the word "aforesaid" be connected with "murder" and "robbery," as *290 well as with "other piracy," yet it seems difficult to resist the *conviction, that the legislature considered murder and robbery as acts of piracy. The 11th section punishes accessories after the fact. They are those who, "after any murder, felony, robbery, or other piracy whatsoever, aforesaid," shall have been committed, shall furnish aid to those by whom the crime has been perpetrated. Can it be doubted, that the legislature considered murder, felony and robbery, committed on the high seas, as piracies?
If it be answered, that although this opinion was entertained, yet, if the legislature was mistaken, those whose duty it is to construe the law, must not yield to that mistake; we say, that when the legislature manifests this clear understanding of its own intention, which intention consists with its words, courts are bound by it. Of the meaning of the term robbery, as used in the statute, we think no doubt can be entertained. It must be understood in the sense in which it is recognised and defined at common law.
The question, whether this act extends further than to American citizens, or to persons on board American vessels, or to offences committed against citizens of the United States, is not without its difficulties. The constitution having conferred on congress the power of defining and punishing piracy, there can be no doubt of the right of the legislature to enact laws punishing pirates, although they may be foreigners, and may have committed no particular *631] offence against the United States. The only *question is, has the legislature enacted such a law? Do the words of the act authorize the courts of the Union to inflict its penalties on persons who are not citizens of the United States, nor sailing under their flag, nor offending particularly against them? The words of the section are in terms of unlimited extent. The words "any person or persons," are broad enough to comprehend every human being. But general words must not only be limited to cases within the jurisdiction of the state, but also to those objects to which the legislature intended to apply them. Did the legislature intend to apply these words to the subjects of a foreign power, who in a foreign ship may commit murder or robbery on the high seas?
The title of an act cannot control its words, but may furnish some aid in showing what was in the mind of the legislature. The title of this act is, "an act for the punishment of certain crimes against the United States." It would seem, that offences against the United States, not offences against the human race, were the crimes which the legislature intended by this law to punish. The act proceeds upon this idea, and uses general terms in this limited sense. In describing those who may commit misprision of treason or felony, the words used are "any person or persons;" yet these words are necessarily confined to any person or persons owing permanent or temporary allegiance to the United States. The 8th section also commences with the *632] words "any person or persons." But these words must be *limited in some degree, and the intent of the legislature will determine the extent of this limitation. For this intent, we must examine the law. The succeeding member of the sentence commences with the words, "if any captain or mariner of any ship or other vessel, shall piratically run away with such ship or vessel, or any goods or merchandise, to the value of fifty dollars, or yield up such ship or vessel voluntarily to any pirate." The words "any captain or mariner of any ship or other vessel," comprehend *291 all captains and mariners, as entirely as the words "any person or persons," comprehend the whole human race. Yet it would be difficult to believe, that the leglislature intended to punish the captain or mariner of a foreign ship, who should run away with such ship, and dispose of her in a foreign port, or who should steal any goods from such ship to the value of fifty dollars, or who should deliver her up to a pirate, when he might have defended her, or even according to previous arrangement. The third member of the sentence also begins with the general words "any seaman." But it cannot be supposed, that the legislature intended to punish a seaman, on board a ship sailing under a foreign flag, under the jurisdiction of a foreign government, who should lay violent hands upon his commander, or make a revolt in the ship. These are offences against the nation under whose flag the vessel sails, and within whose particular jurisdiction all on board the vessel are. Every nation provides for such offences the punishment its own policy may dictate; and no general words of a statute ought to *be construed to embrace them, [*633 when committed by foreigners against a foreign government.
That the general words of the two latter members of this sentence are to be restricted to offences committed on board the vessels of the United States, furnishes strong reason for believing that the legislature intended to impose the same restriction on the general words used in the first member of that sentence. This construction derives aid from the 10th section of the act. That section declares, that "any person" who shall "knowingly and wittingly aid and assist, procure, command, counsel or advise, any person or persons, to do or commit any murder or robbery, &c.," shall be an accessory before the fact, and on conviction, shall suffer death. It will scarcely be denied, that the words "any person," when applied to aiding or advising a fact, are as extensive as the same words when applied to the commission of that fact. Can it be believed, that the legislature intended to punish with death, the subject of a foreign prince, who, within the dominions of that prince, should advise a person, about to sail in the ship of his sovereign, to commit murder or robbery? If the advice is not a crime, within the law, neither is the fact advised, a crime within the law.
The opinion formed by the court on this subject might be still further illustrated by animadversions on other sections of the act. But it would be tedious, and is thought unnecessary. The court is of opinion, that the crime of robbery, committed by a person on the high seas, on board of *any [*634 ship or vessel, belonging exclusively to subjects of a foreign state, on persons within a vessel belonging exclusively to subjects of a foreign state, is not a piracy within the true intent and meaning of the act for the punishment of certain crimes against the United States. This opinion will probably decide the case to which it is intended to apply.
Those questions which respect the rights of a part of a foreign empire, which asserts, and is contending for its independence, and the conduct which must be observed by the courts of the Union towards the subjects of such section of an empire who may be brought before the tribunals of this country, are equally delicate and difficult. As it is understood, that the construction which has been given to the act of congress, will render a particular answer to them unnecessary, the court will only observe, that such questions are generally rather political than legal in their character. They *292 belong more properly to those who can declare what the law shall be; who can place the nation in such a position with respect to foreign powers as to their own judgment shall appear wise; to whom are intrusted all its foreign relations; than to that tribunal whose power as well as duty is confined to the application of the rule which the legislature may prescribe for it. In such contests, a nation may engage itself with the one party or the other; may observe absolute neutrality; may recognise the new state absolutely; or may make a limited recognition of it. The proceeding in courts must *635] depend so entirely on the course of the government, *that it is difficult to give a precise answer to questions which do not refer to a particular nation. It may be said, generally, that if the goverment remains neutral, and recognises the existence of a civil war, its courts cannot consider as criminal, those acts of hostility which war authorizes, and which the new government may direct against its enemy. To decide otherwise, would be to determine that the war prosecuted by one of the parties was unlawful, and would be to arrange the nation to which the court belongs against that party. This would transcend the limits prescribed to the judicial department.
It follows, as a consequence, from this view of the subject, that persons or vessels employed in the service of a self-declared government, thus acknowlegded to be maintaining its separate existence by war, must be permitted to prove the fact of their being actually employed in such service, by the same testimony which would be sufficient to prove that such vessel or person was employed in the service of an acknowledged state.
The seal of such unacknowledged government cannot be permitted to prove itself; but it may be proved by such testimony as the nature of the case admits; and the fact that such vessel or person is so employed, may be proved, without proving the seal.
JOHNSON, Justice.
The first of these questions arises on the construction of the first division of the 8th section of the act for the punishment of *636] certain crimes. *That act comprises two classes of casee, the second of which may again be subdivided into two divisions. In the second class of cases, each crime is specifically described, in the ordinary mode of defining crimes, and so far the constitutional power of defining and punishing piracies and felonies on the high seas, is strictly complied with. But with regard to the first class of cases, the legislature refers for a definition to other sources  to information not to be found in that section itself. The words are these: "if any person shall commit, upon the high seas, &c., murder or robbery, or any other offence, which, if committed in the body of a county, would, by the laws of the United States, be punishable with death, &c., such person shall, upon conviction thereof, suffer death." Thus referring to the common-law definition of murder and robbery alone, or to the common-law definition of murder and robbery, with the superadded statutory requisite of being made punishable with death, if committed on land, in order to define the offence which, under that section, is made capitally punishable.
The crime of robbery is the offence charged in this indictment, and the question is, whether it must not be shown, that it must have been made punishable with death, if committed on land, in order to subject the offender *293 to that punishment, if committed on the high seas. And singular as it may appear, it really is the fact in this case, that these mens' lives may depend upon a comma, more or less, or upon the question whether a relative, which may take in three antecedents just as well as one, shall be confined to one *alone. Upon such a question, I here solemnly declare, that I never [*637 will consent to take the life of any man, in obedience to any court; and if ever forced to choose between obeying this court, on such a point, or resigning my commission, I would not hesitate adopting the latter alternative.
But to my mind it is obvious, that both the intent of the legislature and the construction of the words, are in favor of the prisoners. This, however, is more than I need contend for, since a doubt relative to that construction or intent ought to be as effectual in their favor, as the most thorough conviction. When the intent of the legislature is looked into, it is as obvious as the light, and requires as little reasoning to prove its existence, that the object proposed was, with regard to crimes which may be commited, either on the sea or land, to produce an uniformity in the punishment, so that were death was inflicted in the one case, it should be inflicted in another. And congress certainly legislated under the idea, that the punishment of death had been previously enacted for the crime of robbery on land, as it had, in fact, been for murder, and some other crimes. And in my opinion, this intent ought to govern the grammatical construction, and make the relative to refer to all three of the antecedents, murder, robbery and other crimes, instead of being confined to the last alone. That it may be so applied, consistently with grammatical correctness, no one can deny; and if so, in favorem vitæ, we are, in my opinion, legally bound to give it that construction. Again, there is no reason to think, that the word other is altogether a supernumerary *member of the sentence. To give the [*638 construction contended for in behalf of the United States, that word must be rendered useless and inoperative: the sentence has the same meaning, with or without it. But if we retain it, and substitute its definition, or examine its effect upon the meaning of the terms associated with it, we then have the following results: other is commonly defined to mean not the same or (what is certainly synonymous) not before mentioned. With this expression, the sentence would read thus: "murder, or robbery, or any offence, not before mentioned," for which the punishment of death is by law inflicted. And as the use of the comma is exceedingly arbitrary and indefinite, by expunging all the commas from the sentence, the meaning becomes still more obvious. Or, if instead of substituting the words "not before mentioned," we introduce the single term unenumerated, in the sense of which the term other is unquestionably used by the legislature, the conclusion becomes irresistible in favor of the prisoners. There is another view of this subject that leads to the same conclusion: by supplying an obvious elision, the same meaning is given to this section. The word other is responded to by than, and the repetition of the excluded words is understood. Thus, is the case before us, by supplying the elision, we "make murder, robbery, or any crime other than murder or robbery," made punishable, &c., the signification of which words, had they been used, would have left no doubt.
There are several inconsistencies growing out of a construction unfavorable *294 to the prisoners, which *merit the most serious consideration. The first is, the most sanguinary character that it gives to this law in its operation; for it is literally true, that under it, a whole ship's crew may be consigned to the gallows, for robbing a vessel of a single chicken, even although a robbery committed on land, for thousands, may not have been made punishable, beyond whipping or confinement. If natural reason is not to be consulted on this point, at least, the mild and benignant spirit of the laws of the United States merit attention. With regard to the mail, this inconsistency actually may occur, under existing laws, should the mail ever again be carried by water, as it has been formerly. This cannot be consistent with the intention of the legislature.
But it is contended, if congress had not intended to make murder and robbery punishable with death, independently of the circumstance of those offences being so made punishable, when committed on land, they would have omitted those specified crimes altogether from this section, and have enacted, generally, that all crimes made punishable with death, on land, should be punished with death, if committed on the seas, without enumerating murder and robbery. This is fair reasoning; and in any case but one of life and death, it might have some weight. But in no case, very great weight; because, in that respect, a legislature is subject to no laws in the selection of the course to be pursued. In this case, the obvious fact is, that they commenced enumerating, and fearing some omission of crimes then *640] supposed subject by law to death, these *general descriptive words are resorted to. But every other crime that this division of the section comprises, was punishable with death, both those which precede robbery in the enumeration, and those which come after. Robbery, except in case of the mail, stands alone; and, no doubt, was introduced, under the idea, that that also had the same punishment attached to it. If it had not, in fact, then it was not the case on which the legislature intended to act, and according to my views of the grammatical or philological construction of the sentence, it is one on which they have not acted. This construction derives considerable force also, from the consideration that this act is framed on the model of the British statute, which avowedly had this uniformity for its object.
The second question proposed in this case is one on which I presume, there can be no doubt. For the definition of robbery under this act, we must look for the definition of the term in the common law, or we will find it nowhere; and according to my construction, superadd to that definition, the circumstance of its being made punishable with death, under the laws of the United States, if committed on land, and you have described the offence made punishable under this section.
There are eleven questions certified from the circuit court of Massachusetts; but of those eleven, these two only appear to me to arise out of the case. The transcript contains nothing but the indictment and impannelling of the jury. No motion; no evidence; no demurrer ore tenus, or case stated, appears upon the transcript, on which the remaining questions could *641] *arise. On the indictment, the first two questions might well have been raised by the court themselves, as of counsel for the prisoners; but so far as appears to this court, all the other questions might as well have been raised in any other case. I here enter my protest against having these *295 general questions adjourned to this court. We are constituted to decide causes, and not to discuss themes, or digest systems. It is true, the words of the act, respecting division of opinion in the circuit court, are general; but independently of the consideration, that it was not to be expected that the court could be divided, unless upon questions arising out of some cause depending, the words in the first proviso, "that the cause may be proceeded in," plainly show that the questions contemplated in the act are questions arising in a cause depending; and if so, it ought to be shown that they do arise in the cause, and are not merely hypothetical. In the case of Martin v. Hunter, 7 Cranch 603, 1 Wheat. 304, this court expressly acted upon this principle, when it went into a consideration of the question, whether any estate existed in the plaintiff in error, before it would consider the question on the construction of the treaty, as applicable to that estate.
If, however, it becomes necessary to consider the other questions in this case, I will lay down a few general principles, which, I believe, will answer all:
1. Congress can inflict punishment on offences committed on board the vessels of the United States, or by citizens of the United States, anywhere; but congress cannot make that piracy, which is not piracy by *the [*642 law of nations, in order to give jurisdiction to its own courts over such offences.
2. When open war exists between a nation and its subjects, the subjects of the revolted country are no more liable to be punished as pirates, than the subjects who adhere to their allegiance; and whatever immunity the law of nations gives to the ship, it extends to all who serve on board of her, excepting only the responsibility of individuals to the laws of their respective countries.
3. The proof of a commission is not necessary to exempt an individual serving on board a ship, engaged in the war, because any ship of a belligerent may capture an enemy; and whether acting under a commission or not, is an immaterial question as to third persons: he must answer that to his own government. It is only necessary to prove two facts: 1st. The existence of open war. 2d. That the vessel is really documented, owned and commanded as a belligerent vessel, and not affectedly so, for piratical purposes.
4. For proof of property and documents, it is not to be expected, that any better evidence can be produced than the seal of the revolted country, with such reasonable evidence as the case may admit of, to prove it to be known as such; and a seal once proved, or admitted to a court, ought afterwards to be acknowledged by the court, officially, at least, as against the party who has once acknowledged it.
CERTIFICATE.  This cause came on to be heard, on the transcript of the record of the circuit court of the United States for the district of Massachusetts, *and on the questions on which the judges of that court [*643 were divided; and was argued by counsel on the part of the United States. On consideration whereof, this court is of opinion, that a robbery committed on the high seas, although such robbery, if committed on land, would not, by the laws of the United States, be punishable with death, is piracy under the eighth section of the act entitled, "an act for the punishment *296 of certain crimes against the United States;" and that the circuit courts of the United States have jurisdiction thereof. And that the crime of robbery, as mentioned in the said act of congress, is the crime of robbery as recognised and defined at common law.
This court is further of opinion, that the crime of robbery, committed by a person on the high seas, on board of any ship or vessel belonging exclusively to subjects of a foreign state, on persons within a vessel belonging also exclusively to subjects of a foreign state, is not piracy within the true intent and meaning of the act, entitled, "an act for the punishment of certain crimes against the United States," and is not punishable in the courts of the United States.
This court is further of opinion, that when a civil war rages in a foreign nation, one part of which separates itself from the old established government, and erects itself into a distinct government, the courts of the Union must view such newly-constituted government as it is viewed by the legislative and executive departments of the government of the United States. If the government of the Union remains neutral, but recognises the existence *644] of a civil war, the courts *of the Union cannot consider as criminal, those acts of hostility, which war authorizes, and which the new government may direct against its enemy. In general, the same testimony which would be sufficient to prove that a vessel or a person is in the service of an acknowledged state, must be admitted to prove that a vessel or person is in the service of such newly erected government. Its seal cannot be allowed to prove itself, but may be proved by such testimony as the nature of the case admits. And the fact that a vessel or person is in the service of such government may be established otherwise, should it be impracticable to prove the seal.
All which is ordered to be certified to the circuit court of the United States for the district of Massachusetts.