Robinson *v.* McGregor.

———•◆•———

ROBINSON and others *vs.* McGREGOR and others.

R. died, leaving a widow and six children surviving him. After his death, his real estate was sold, under a decree in partition; and the sum of $1020,04 was directed to be invested for the widow, the interest to be paid ..to her during her life, and after her death the principal was to be paid to R.'s heirs. The commissioners in partition loaned the money to O., one of their number, who paid the interest to the widow, during his lifetime, and after his death his executors continued to do the same, for several years, until the widow's death. *Held*, that the transaction was to be treated as a loan to O., and as standing on the same footing as if it had been a loan to, and a bond from, any other person; and that the interest did not stop running from the time when the principal became due, by the death of the widow.

*Held also*, that it was the duty of O. to invest the money, according to the statute, in permanent securities, at interest; and that his executors could not be heard to interpose a nonperformance of duty, as a defense.

Where a decree in partition directs a third of the proceeds of the sale to be invested for the benefit of the widow, and that upon her death it be divided into as many parts as there are heirs, and paid to the heirs respectively, by name; if any of the heirs die in the lifetime of the widow, their executors or administrators—and not their heirs as such—are entitled to receive the payment of the respective shares of those so dying.

Where such decree, however, directs the share of one of the heirs, who is a married woman, to be paid to her husband in right of his wife, and he dies before actual payment, leaving his wife surviving, she becomes re-instated in her original rights, and is entitled to receive her share, not as her hus-

band's widow or representative, but as the heir of the original owner of the land.

If one of the heirs, who is a female, has married since the decree, her share will be directed to be paid to her, instead of her husband.

This was a petition by Christopher Robinson and others, children and heirs at law of Thomas Robinson, deceased, praying that certain moneys arising from the sale of the real estate of the said Thomas Robinson, under a decree in partition, made since his death, and which moneys were alleged to be in the hands of the defendants Claiborne Ferris, James Ferris and Watson Ferris, might be paid to the petitioners, by them, with interest; the share of each of the petitioners in the said moneys being alleged to be one-sixth. It appeared that Thomas Robinson died sometime prior to the year 1825, intestate, leaving six children and a widow, him surviving; he being at the time of his death possessed of considerable real estate; that for the purpose of dividing such real estate between such heirs and widow, proceedings for partition were instituted in the court of chancery, and on the 24th of August, 1825, a decree was made for the partition and sale of the premises; that James Oakley, Joseph Leggett and William Bowne were appointed commissioners to make partition, who subsequently sold the premises for $3380. After providing for the payment of the costs, it was thereupon ordered by the court that "one-third of the residue of the said moneys be invested or put out at interest on real security, for the benefit of the said Ann Robinson, [the widow,] during her natural life, as and for her right of dower, &c. And that the interest be annually paid to the said Ann Robinson during her natural life." The commissioners were further ordered to divide the remaining two-thirds of the said proceeds into six parts, and pay over the same to the said heirs. And it was further ordered, that after the death of the widow, the one-third directed to be invested for her, should be divided into six equal parts, and one part paid to each of the heirs. After deducting $319,86, for costs, $3060,14 remained as the proceeds; the widow's share of which was $1020,04. This latter sum came to the hands of James Oakley, one of the commissioners,

Robinson *v.* McGregor.

who regularly paid the interest thereon, until his death, in 1840, at which time the money was still in his hands. He died possessed of a considerable estate; and left a will, by which he devised or bequeathed a part, if not the whole, to his nephews, Claiborne Ferris, James Ferris and Watson Ferris, and appointed them his executors. After his death, and down to the time of the death of Ann Robinson, the widow, in December, 1847, the payment of the interest was regularly continued by Claiborne Ferris, or James Ferris, as representative of the estate of Oakley. The petition alleged that the said executors received ample funds from the estate to produce the yearly interest or income aforesaid; and that they still had sufficient funds of the estate in their hands for the payment of the money so left in the hands of Oakley, with interest, and that they were liable and chargeable for the payment of the same. It also appeared that Bowne was dead; and that Leggett, the other commissioner, resided in Philadelphia, and was irresponsible. Upon this petition an order was made, at a special term, directing the said Claiborne Ferris, James Ferris and Watson Ferris, executors as aforesaid, to pay to the petitioners the said sum of $1020,04, with interest from December 28th, 1847, and costs; with a decree over against Leggett, in case of their inability. The cause was subsequently brought to a re-hearing before the general term, and it was referred to Philo T. Ruggles, Esq. as sole referee, to ascertain and report upon the truth of the several matters set forth in the petition and affidavits, and whether the executors had the moneys claimed in the petition, and the amount thereof, and to whom the same belonged and ought to be paid, and the rights and interests of the parties entitled to receive the same, &c. The referee made his report, and the cause was now heard upon the report, and for further directions.

*S. Sherwood*, for the petitioners.

*W. Silliman*, for the executors of Oakley.

*By the Court*, ROOSEVELT, J.   Thomas Robinson, deceased, it appears, left a widow and six children surviving him.   After his death his real estate was sold under a decree in partition; and the sum of $1020,04, was invested for the widow; the interest to be paid, during her lifetime to her, and after her death the principal was to be paid to the heirs.   The commissioners in partition loaned the money to James Oakley, one of their number.   He paid the interest from time to time, for several years, to the widow; and his executors, after his death, continued to do the same for several years longer, till the widow's death.   Both parties, it will thus be seen, the testator Oakley and his representatives, viewed the transaction as a loan to him, and as standing on the same footing as if it had been a loan to, and a bond from, any other person.   Can they now pretend that as soon as the principal became payable the interest stopped?   Was such ever contended to be the effect of the nonpayment of a bond at maturity?   Had the executors of Oakley really wished to pay off the principal, and really found difficulty in determining who were the rightful claimants, they would have brought the money into court.   Not having done so, we may fairly infer they found the use a full equivalent for the interest.   They found it so, by their own admission, for six or seven years before the widow's death; and nothing is shown to warrant the idea of any change after that event.   Besides, it was the duty of Oakley to invest this money, according to the statute, "*in permanent securities at interest.*"   (2 *R. S.* 327.)   And his executors cannot be heard to interpose a nonperformance of duty as a defense.   He might have purchased public stocks.   Not having done so, the only other alternative allowed by the statute, (§ 70,) was a "bond and mortgage."   We have a right to presume, therefore—and his representatives are estopped from denying the presumption—that he gave and took a bond; or, at least, that he intended to be held to the same liabilities as if he had done so.

Another question has been raised as to the persons entitled to receive the money.   Some of the original six heirs, the tenants in common, died in the lifetime of the widow.   To whom, on their deaths, did their shares pass?   It seems to have been

Robinson *v.* McGregor.

assumed that the proceeds of the partition sale, although. personal in fact, were in law to be deemed real estate. In *Snowhill* v. *Snowhill*, (2 *Green's Ch. R.* 20,) it was held that where property, even of an infant, was changed by authority of a competent tribunal, from real to personal, it went, upon the death of the infant, to his personal representatives. I find no warrant for the contrary idea. None, certainly, is to be found in the statute. And the decree not only contains none, but expressly directs that, on the death of the widow, the third, invested for her benefit, be divided into six equal parts, "and *paid*" to the complainant, Ralph D. Robinson, and the other five parties, by name. If any of these parties therefore have died, their personal representatives, that is, their executors or administrators, and not their heirs, as such, are entitled to receive the payment of their respective shares, with one qualification however. The decree had directed the share of Mrs. Sprong to be paid to John Sprong, "in right of his said wife." He having died before actual payment, leaving her surviving, she becomes reinstated in her original rights, and is entitled to receive her share, not as *his* widow or representative, but as the heir of her father. As to Mrs. McGregor, formerly Ann C. Robinson, another of the six heirs, who since the decree in partition, has married Malcom McGregor, her rights it seems to me, will be best consulted, as the law now stands in reference to married women, by directing that sixth to be paid to her, instead of her husband. Such a course, if not positively prescribed by the late act of the legislature, is at least within the discretion of the court sitting in equity, and will best harmonize with the present policy of the state, as evidenced in the recent legislative enactments.

An order should therefore be entered, declaring the rights of the parties, and directing the payment by the executors of Oakley, of one-sixth of $1373,33, with interest from 29th April, 1853, (the date of the referee's report,) to Christopher Robinson, one-sixth to Mrs. McGregor, and one-sixth to Mrs. Sprong; and also to the attorney of those three petitioners his costs, to be taxed; with liberty to the personal representatives of the other three heirs of Thomas Robinson, the elder, should their

shares be withheld, to apply to this court at special term for such further direction, on the footing of this order, as they may be advised and as may be necessary and proper.

[NEW-YORK GENERAL TERM, December 5, 1853. *Edmonds, Mitchell, Edwards* and *Roosevelt,* Justices.]