The opinion of the referee is as follows :
The complaint sets out the facts and also the views of the plaintiff as to the distribution of the funds in his hands. He claims that after making the proper deductions, “ so much thereof as is proceeds of the real estate so sold during the lunacy of this lunatic will pass and belong to persons who, by the law of this. State, would have inherited the said real estate, if it had ' remained unsold, and the remainder thereof will pass and belong to the personal representatives of the said lunatic.”
As to the income, plaintiff claims that the income of *438 all the said estate, and funds accrued prior to the decease of the said lunatic, was and is personalty, forming part of the share so passing to the personal representatives, and all income since accrued or accruing, and also all profits on the sale or disposition of the principal, will be properly distributable between realty and personalty in the proportion of the amounts thereof respectively, computed up to the said time of the decease of said lunatic.
The answer of the defendants represented by Mr. True, admits these legal propositions, but claims for those defendants such rights, shares, and interests in the said funds and estates as the court may deem them entitled to, anything in said answer contained to the contrary notwithstanding. A suggestion was made by the counsel for the other defendants, that this admission of the law, touching the distribution of the assets in the hands of the plaintiff, concluded him from asserting any different rule, and that the referee was therefore bound to accept the law as admitted by all parties to be correct. This view I cannot adopt. The admission in the answer as to the proper mode of distributing the funds is merely an admission of a legal conclusion, in no way binding upon the court. The facts being conceded, it is for the latter to apply the law ; this it must do on its own responsibility. Besides which, the order of the reference directs that the referee shall “report upon the issues or questions involved in this action, with his opinion as to the proper distribution or disposition to be made of the said estate, and the rights and interests of the respective parties therein.”
It is, therefore, my duty to form and report my opinion on the legal results flowing from the facts established before me. The counsel for the next of kin (with the exception of the defendants represented by Mr. Livingston), claims:
*439 1. “ That the property in the hands of the committee, consisting, as it does, of money and personal securities, should be treated as personalty, and therefore go to the administrator.” In support of this proposition, he argued that we should be guided by the common law of England, as it stood before the passage of the recent statute on the subject; that under tfiat law, the fund resulting from the sale of the lunatic’s real estate, became personalty, and should be so treated. He admitted that the rule was now otherwise in England, but urged that the change was owing to the passage of the statute above referred to. This act of the legislature of Great Britain, counsel contended, was of itself proof that the law had been otherwise, prior to its exactment. I was referred on this subject to Sloclc on Non Compos Mentis, 9 Eng. Com. Law Lib., N. 8., p. 126, under head of “Succession.” Also, as to the powers of a court of chancery to convert the real estate of a lunatic into personalty, to the Matter of Saulsbury (3 Johns. Ch., 347; 2 Greene Ch., 20; Robinson v. McGregor, 16 Barb., 531; Rev. Stat., part 2, ch. 5, tit. 2, § 25).
2. The learned counsel also insisted that the profit that the committee had made by his judicious management of the estate was in fact nothing more nor less than income that he had earned for the estate, not six or seven per cent., but fifteen or twenty, as -the case might be ; hence, the so-called increase, being merely the return that he had received from his investment, should be treated as personalty.
Mr. Livingston, in opposition, insisted that the distribution of the estate should be made upon the principles set out in the complaint, and cited Swezey v. Thayer, 1 Duer, 286.
Practically, the difference between the counsel amounts to this: If the funds are paid out to the foreign administrator without reference to the source from *440 which they proceed, Mr. Livingston’s clients would receive nothing—the law of Massachusetts not recognizing any claim on their part; whereas a different result would follow from the operation of the statutes of this State, should they control in the distribution of any of the funds in the committee’s hands.
After a careful consideration of the points and authorities submitted by the learned counsel, I can find no warrant for holding that the lunatic’s property changed its character in law, from the mere fact of a sale having taken place. The simple circumstance that the assets in the hands of testator consist of money, is not at all conclusive as to the rule of distribution. It is well settled that money may have, as it frequently has, the character of realty attached to it, so far as being heritable, and the like (Bouv. L. Dic., Real Property); while real property, on the other hand, may be treated and distributed as personalty, where equity requires that it should be so considered. Thus a devise of lands to trustees, in trust to sell the same and pay the whole proceeds to an alien cestui que trust, is in equity a bequest of personalty, and the alien may take and hold the proceeds, and can compel the execution of the trust, even as against the State (Craig v. Leslie, 3 Wheat., 295).
That a considerable part of the assets in the hands of the committee is derived from the sale of the lunatic’s land is not disputed ; it is also unquestioned that such sale was made at times when the lunatic could not have any will or intention on the subject. In most cases where the doctrine of equitable conversion has been invoked, the presumed intent of the owner of the prop - erty has been deemed controlling by the courts in determining its character. But in this instance the law has established the fact that the owner was entirely incompetent tó exercise any act of ownership, or to make any disposition whatsoever of his estate. If, then, I am *441 to hold that the character of the real estate was changed by the partition sale, it must be on some grounds entirely distinct from any assent, express or implied, on the part of the lunatic.
I can find no such ground. It is not necessary for me to determine whether the powers of the court of chancery are as broad as they are claimed to be by the learned counsel for the defense (Mr. True). The case cited by him (Re Saulsbury, 3 Johns. Ch., 347) simply holds that in the management of the lunatic’s estate, the interest of the lunatic is more regarded than the contingent interest of those who may be entitled to the succession, and that his (the lunatic’s) real estate may be converted into personal, or personal into real, if for the benefit of the lunatic. I do not see that this general proposition is at all applicable to the case under consideration. The property sold was sold in a partition suit brought by cotenants of the lunatic, and not upon his petition, or on the petition of his committee, or for his benefit. True, it may be inferred from the fact of the decree having been made by a court which is presumed to watch over the interests of the lunatic, that it was not deemed that his interests would be impaired by a sale in partition. Yet it is not claimed that there is anything in the decree showing the sale to have been made, in whole or in part, for the protection or furtherance of these interests.
The cases cited in Re Saulsbury all go to show that the action of the court was based upon affirmative proof that the estate of the lunatic (or infant) was to be manifestly benefited, and that the decree was placed upon that particular element in the case. There is no conflict between this case and the English cases holding that “the first and paramount rule to be observed is the comfort of the lunatic; the next, not to vary the nature of the property so as to affect the right of the succession, unless it be for the benefit of the lunatic” *442 (1 Beatty Ch., and other cases cited in Sweney v. Thayer, 1 Duer, 294. See, also, 2 Rev. Stat., p. 342 [partition] ).
T may here add, that the fact of the sale having been made by order of the court of chancery, does not of itself create even a presumption that the interest of the lunatic required a partition. This is clear from the statute last cited (Partition), providing that the reference to a master may be made whenever it shall appear that the interest of such lunatic, &c., or any of the parties interested in such estate, requires a partition thereof.
The case of Robinson v. McGregor (16 Barb., 534), does not strike me as being in conflict with these views. Thomas Robinson, the owner of certain lands, died intestate ; the lands were sold under a decree in partition. His heirs were all living at the time, and must be presumed either to have consented to the sale, or to have opposed the decree, which they, being of sound mind, had the ability and the right to do. In either case they were bound by the decree thus made. The difficulty in that case appears to have arisen more from careless phraseology than from any inherent difficulty in the application of legal principles. It was held, however, substantially that the court had intended to convert the realty into personal property, some stress being laid upon the “ express ” direction that the fund released be divided into six equal parts, “ and paid” to the complainant and the other five parties “ by name.” There was therefore a conversion by the decree of a competent court, making that conversion in express terms, and also an acquiescence, actual or implied, on the part of individuals able to consent.
. I do not consider the statute of George IV. as changing the established rule in England, but simply as a declaration of the law as it stood prior to that time. As to the income of the estate, that question offers no *443 difficulty. If, I am right in holding that the proceeds of the partition sale are to be treated as realty, the income of such proceeds, accruing up to the time of the decease of the lunatic, must go to the administrator, to be treated as part of the personal estate of the deceased. See 3 Rev. Stat., 5 ed., id. 169. The profits made on the investment of the proceeds of the real estate must be treated as partaking of the same character as the property to which it constitutes an addition.
My conclusions therefore are:
1. That the proceeds of the real estate sold in the partition suit retain the character of realty.
2. That the income of such proceeds, so far as they accrued prior to the death of the lunatic, are to be deemed personalty.
3. That the increase or gain derived from the sale of part of the securities representing real estate, is to be deemed realty.
A small sum was received by the committee as an award for real estate of the lunatic, taken by the city ; this should also be treated as realty.
The rule of distribution set out in the complaint and admitted in the answer, I, therefore, consider applicable to this case, and am of opinion that it should prevail in the disposition of the funds in the hands of the committee.
I have annexed to my report on the facts and the law, the evidence adduced before me, the various exhibits produced by plaintiff, and a statement, made out according to the views above expressed.
New York, June 14, 1870.
F. R. Coudert, Referee.
Report confirmed on motion.