Loomis
v.
Stuyvesant.

## LOOMIS vs. STUYVESANT and others.

Where the mortgagees named in two bonds and mortgages, assigned the bonds and mortgages, to a grantee of the mortgagor, as valid and subsisting mortgages, in order to protect his title to the mortgaged premises against subsequent liens thereon, and at the time of the assignment such mortgagee held judgments against the mortgagor, for the same debt for which their mortgages were given, recovered subsequent to the recording of such mortgages, but before the conveyance of the mortgaged premises to such grantee and assignee; *Held*, that the mortgagees and all persons claiming under them subsequent to such assignments, were estopped from alleging that the mortgages were not duly executed and accepted by the mortgagees named therein.

*Held also*, that such judgments were not liens upon the equity of redemption in the mortgaged premises; and that the legal effect of the assignment of the mortgages, to secure the title of the assignee, was to prevent a sale of the mortgaged premises under the judgments, to satisfy the debts secured by the mortgages and also by the judgments.

A judgment, which is recovered, or confessed, for a debt which is also secured by a mortgage upon real estate, is not a lien upon the mortgaged premises; nor can the equity of redemption of the judgment debtor, in the mortgaged premises, be sold under an execution upon such judgment.

The purchaser of a judgment during the pendency of a foreclosure suit, from a defendant in the suit, is not entitled to come in by petition and be made a party to the suit, under the provisions of the act of 1840, to reduce the expense of foreclosing mortgages in the court of chancery.

December 5. THE bill in this cause was filed in February, 1840, against P. Stuyvesant, G. Stuyvesant, J. R. Stuyvesant and others, to foreclose two mortgages, the one given by P. Stuyvesant to J. R. Stuyvesant on the 25th of June, 1839, and the other given by the same mortgagor to G. Stuyvesant on the 28th of the same month. The bill was taken as confessed against some of the defendants for the want of an appearance; against the defendant, G. Stuyvesant, upon his writen consent given on the 24th of August, 1840; and against J. R. Stuyvesant for want of an answer, after he had appeared in the cause. A final decree, for the foreclosure and sale of the mortgaged premises, was made on the 3d of August, 1841. On the 18th of the same month motions were made by the defendants, G. Stuyvesant and J. R. Stuyvesant, to open the orders taking the

bill as confessed against them, and that they might come in and make a defence to the suit. But the motions were denied, on the ground that by their own showing they had assigned all their interest in the judgments which they formerly held against the mortgagor, and that they had no interest in, or lien upon, the mortgaged premises.

The Greenwich Bank, thereupon, as the assignee, *pendente lite*, of a judgment in favor of J. R. Stuyvesant against the mortgagor and G. G. Root, recovered in July, 1839, for the same debt or a part of the same debt for which the mortgage to him was given, and which judgment was claimed to be a lien upon the mortgaged premises, applied to the court for leave to be made a party to the suit and to defend the same. And a similar motion was made on the part of T. E. Davis, who had, in September, 1840, purchased a judgment, against the mortgagor, which was confessed in favor of the defendant, G. Stuyvesant, on the 7th of August, 1839, to secure the same debt for which the mortgage of the 28th of June, 1839, was given.

*L. R. Marsh,* for the complainant.

*J. Rhoades & M. T. Reynolds,* for the bank.

*E. H. Blatchford,* for the motion of Davis.

THE CHANCELLOR. The question upon ·the merits of this case, independent of the objection that neither of the applicants has any right to apply in this way to be made parties, under the act of May, 1840, arises upon the effect of the mortgages and judgments, in connection with the proper construction of the stipulations signed by S. P. Lyman, as the agent for the complainant, on the 20th of September, 1839. The affidavit of Lyman, who transacted the business for the complainant, is positive as to what occurred at the time when the mortgages were assigned and the stipulations given. It must therefore control as against the information and belief of the applicants. And the le-

gal effect of the whole transaction, in reference to facts which cannot be disputed by any one, must control in preference to the conflicting testimony as to what was intended to be the effect of the written instruments. The object of the assignment of these bonds and mortgages, to the complainant, was unquestionably to protect and secure the title to the mortgaged premises which P. Stuyvesant had then conveyed, or agreed to convey to him, in payment or part payment of a debt. It is stated in the affidavits, upon which this application is founded, that the mortgages were given without the knowledge or assent of the mortgagees. But the mortgagees having assigned the mortgages to the complainant, they and all persons claiming under them, subsequent to such assignment, are estopped from alleging that the mortgages were not accepted by them. And at the time when the assignments of the mortgages were made, no other persons than the assignors had any interest whatever in these judgments, under which the present applicants claim a lien upon the mortgaged premises.

Again, Lyman swears positively that the agent of the mortgagees, as well as the mortgagor, represented the mortgages as being good and valid, and in full force and effect, so far as the premises in question were concerned. He also says that the assignments thereof were received for the express purpose of cutting off all subsequent liens upon the premises. Having executed these assignments, therefore, and put them into the hands of their agent to be delivered to the complainant, in part fulfilment of the contract made with Lyman for him, it would be enabling them to commit a gross fraud upon him to allow the assignors, or those claiming under them by a subsequent transfer of the judgments, to set up as a defence that the assignors of the mortgages did not assent to the giving of the mortgages; which were duly recorded at the time the judgments were recovered. For the purposes of this application it must therefore be considered that the mortgages were duly executed, and accepted by the mortgagees, previous to the docketing of the subsequent judgments. G. Stuyvesant makes no affidavit that

he did not know of, and assent to; the mortgage to him, at the time it was given ; nor is the affidavit of P. Stuyvesant, the mortgagor, produced, to show that the mortgages were made and put on record without the knowledge or assent of the mortgagees. Indeed it is wholly improbable that he gave the subsequent judgment to his brother, as a further security for the mortgage debt, without letting him know that it was already secured by the mortgage upon a part of his property.

A judgment recovered, or confessed, for a debt secured by a mortgage is not a lien upon the mortgaged premises. For the 31st section of the article of the revised statutes relative to executions against property, (2 *R. S.* 368,) declares that it shall not be lawful for the sheriff to sell the equity of redemption of the mortgagor, or of his heirs or assigns, in the mortgaged premises, by virtue of any execution upon such judgment. The legal effect of the assignment of these mortgages, therefore, even as a security of the complainant's title, and reserving the full benefit of the judgments to the mortgagees, would be to prevent the holders of the judgments, respectively, from selling the mortgaged premises to satisfy those judgments. No foreclosure would, therefore, be necessary, except for the purpose of perfecting the title to the lot which by mistake was not included in the deed of P. Stuyvesant to the complainant ; or to cut off the liens of òther incumbrancers, intermediate the date of the mortgages and the recording of the deed to the complainant, other than the judgments for the same debts for which the mortgages respectively were given. And a construction of the written stipulations, given on the 20th of September, 1839, which would either make or leave those judgments a lien upon the mortgaged premises, as against the complainant, would be wholly inconsistent with the assignment of the mortgages for the security and protection of the title of the complainant.

But it was undoubtedly the intention of all parties, to leave to the assignors the full benefit of their judgments as against other property of the defendant in those judg-

ments. And that benefit the assignees of the judgments will have, if the complainant is permitted to bid in the premises at a mere nominal amount, on the sale under the decree. If the premises, however, should be bid up to the full amount of the mortgages, the judgments might be extinguished, as to their liens upon other property of the defendant therein. That was a contingency which probably was not thought of by either party at the time the assignments of the mortgages were made. Still the complainant is entitled to the full benefit of his assignments; and if there is no other way of protecting his rights, those who have succeeded to the rights of the original owners of the judgments must be subjected to that risk.

Probably the rights of all parties would be fully protected, so far as they have any rights, by a decree of strict foreclosure. If the defendants G. Stuyvesant and J. R. Stuyvesant and the assignees of these judgments consent to it, therefore, and serve a written stipulation to that effect upon the complainant's solicitor within twenty days after the delivery of this opinion to the register, the complainant is at liberty to vacate the decree entered in this cause, and to enter a decree of strict foreclosure; declaring that the defendants in this suit, and each and every of them, and the assignees of the judgments of G. Stuyvesant against Peter Stuyvesant, and of J. R. Stuyvesant against Peter Stuyvesant and George G. Root, and all persons claiming under them, or either of them, subsequent to the commencement of this suit, be forever barred and foreclosed of any equity of redemption, interest, or claim, in or to, or any lien on the mortgaged premises in the complainant's bill mentioned, or any part or parcel thereof. And in that case the applicants are to pay the complainant his costs of opposing these applications. The entry of any order upon these applications to be stayed for twenty days unless such stipulation is sooner given.

This suit was commenced long before the passage of the act of May, 1840, to reduce the expense of foreclosing mortgages in the court of chancery. And it does not appear that any notice of lis pendens was filed, after that act

went into effect, so as to affect the rights of judgment creditors who were not made parties. Neither the Greenwich Bank, which has purchased from one of the defendants pendente lite, nor Davis who took the assignment of the G. Stuyvesant judgment in September, 1840, had therefore any right to come in and be made parties to this suit under the act of May, 1840 ; even if they had applied to be made such parties before the final decree was entered. But if they had rights which it was necessary to protect, their proper course was to make themselves parties to the suit in the first place, by bill, according to the practice which existed before the statute ; (*People's Bank* v. *The Hamilton Manufacturing Company*, ante, p. 481 ; *Foster* v. *Deacon, Mad. & Geld. Rep.* 59 ;) and after making themselves parties, by such bill, to apply to the court for such order as might be necessary, to protect their rights, if they had any rights which could thus be protected. If the stipulation, as above suggested, is not given, therefore, these motions must both be denied with costs. Even if such stipulation is given, as these applicants are not properly before the court as parties, and have no right at present to interfere with the suit, no compulsory order can be made upon the complainant to vacate his decree and enter the decree of strict foreclosure as above suggested. But in that case, if a proper bill should be filed by these applicants, the court might be able to make such an order, to stay the sale under the decree, as to prevent the complainant from unnecessarily and wantonly destroying the liens of their judgments upon other property than that which is contained in these mortgages. In case such stipulation is given, therefore, if the complainant refuses to vacate his decree of sale and take a decree of strict foreclosure, as above suggested, these applications must still be dismissed. But in that case the dismissal will be without costs, and without prejudice to the right of the Greenwich Bank and Davis, or either of them, to make themselves parties to this suit, by a proper bill for that purpose ; and to renew their application for such order and directions as may be meet in the case.