## THE GREENWICH BANK *v.* LOOMIS and LYMAN.

A purchaser *pendente lite,* will be bound by a decree in the suit, and the complainant need not make him a party, or otherwise notice his purchase. If he desires to defend the suit, he must make himself a party to it by a supplemental bill, before it terminates.

An original bill cannot be filed by such a purchaser, after a decree in the suit pending, to litigate anew or question the subject matter of such suit.

A bill of review can only be filed after enrolment, and then only for error apparent on the decree, or to produce relevant matter existing at the time of the decree but discovered afterwards. A bill in the nature of a bill of review, may be exhibited after the decree is entered, and before enrolment.

After a decree has been made by the chancellor, it is not competent for any vice-chancellor to make any order or decree which would directly or indirectly discharge, alter or modify the same.

Held accordingly, where after a decree of foreclosure and sale obtained by default in a mortgage suit before the chancellor ; a purchaser, *pendente lite,* of the lands mortgaged, filed a bill before a vice-chancellor, praying for an adjudication that the mortgage never was a lien, or if it were that it belonged to such purchaser, and that the defendant in such suit from whom he bought, had a claim to the lands prior to the mortgage.

A judgment recovered for a debt secured by a mortgage on lands, cannot become a lien upon such lands ; and a sale of the equity of redemption under an execution upon such judgment, will not confer any title upon the purchaser. And it makes no difference that the judgment was not recovered upon the bond accompanying the mortgage, so long as it was obtained for, or confessed to secure, the same indebtedness.

May 15, 16, 18 ; August 9, 1844.

THIS was an original bill in the nature of a bill of review, filed on the 4th of June, 1842, to obtain relief against a decree made in a suit before the chancellor, in which the defendant Loomis was complainant, and Peter Stuyvesant and others were defendants.

A part of the facts material to a proper understanding of those points of the opinion which were deemed worthy of being reported, are to be found in the decision. The other material facts are as follows.

On the 12th of July, 1839, Joseph R. Stuyvesant recovered a judgment for $10,212 32, against Peter Stuyvesant, and G. G.

Root, for a debt due a considerable time before. This judgment was the first one recovered against P. S. and became a lien upon all his real estate. Previous to this on the 25th of June, 1839, Peter S. to secure this indebtedness, executed a bond and mortgage to J. R. S. for $14,500, on divers lots in New York, and caused it to be recorded, without the knowledge or assent of J. R. S., as it was afterwards claimed.

On the 23d of August, 1839, Peter S. conveyed to the complainant Loomis, fourteen lots, including all those mortgaged to J. R. S. They were conveyed expressly subject to various liens, but not to the lien of J. R. S.'s mortgage. The consideration was a debt due from P. S. to Loomis and Lyman; both of whom knew of the judgment in favor of J. R. S.

On the 20th of September, 1839, J. R. S. for a nominal consideration assigned to Loomis, the bond and mortgage of Peter S. and the money due thereon. Loomis on receiving this signed a stipulation to J. R. S. reciting that they were assigned to enable him to perfect his title to three of the lots he had bought of P. S.; also reciting the judgment of J. R. S. as being a part of his demand against P. S. secured by the mortgage; and agreeing that the assignment of the bond and mortgage should not be deemed as cancelling the judgment or in any way impairing its force and validity against P. S., and that J. R. S. should have the same right to enforce the judgment against P. S. as if the assignment had not been made.

The assignment was recorded in October, 1839.

On the 25th of February, 1840, Loomis filed a bill in this court before the Chancellor, to foreclose this mortgage, and made Peter S., Joseph R. S., and others, defendants. A notice of the pendency of the suit was duly filed on the 2d of March, 1840. The bill was taken as confessed against J. R. S.; and the usual decree for a foreclosure and sale was made on the 3d day of August, 1841. This decree was duly enrolled, but there had been no sale of the premises under its provisions.

On the 20th of October, 1840, the Greenwich Bank sold to Joseph R. S., 600 shares of stock of the Hudson Fire Insurance Company, and received therefor an assignment of his judgment against Peter S. and Root. The bank knew of the mortgage,

and were assured it never had been accepted, and knew also of Loomis' purchase of the lots, but not of the assignment of the mortgage.

The bank proceeded to advertise and sell upon the judgment, the lots purchased by Loomis, and bid them in, and held the sheriff's certificate of the sale when this suit was commenced.

The bill charged that there was an agreement between Loomis and J. R. S. on assigning the mortgage, which prevented its becoming operative; that the mortgage never was delivered to or accepted by J. R. S.; that the decree on it was unduly and fraudulently obtained, and the bank has a full defence to the mortgage. It prayed that the mortgage be declared void, for an injunction against the execution of the decree, and that the judgment be declared a valid lien on the lots purchased by Loomis.

The answer denied the fraud and the agreement, and set up a good consideration for the assignment of the mortgage. It set forth the decree in the foreclosure suit, and insisted upon it as a bar against J. R. S. and against the bank claiming under him; and that the judgment and sale conferred no title upon the bank in respect of the mortgaged lots in question.

*G. M. Ogden* and *W. H. Harison*, for the complainants.

*L. R. Marsh* and *S. P. Lyman*, for the defendants.

THE ASSISTANT VICE-CHANCELLOR.—The allegation that the decree in the suit of Loomis against Stuyvesant and others, was unduly or fraudulently obtained, is not supported by any proof; and the complainants are entitled to no relief on that part of their bill.

The next important inquiry relates to their right to be heard in reference to the matters directly and inferentially settled by that decree.

Mr. Loomis filed his bill to foreclose the mortgage of Peter Stuyvesant in February, 1840. Joseph R. Stuyvesant was made a defendant, and a notice of the pendency and objects of the suit was filed in the county clerk's office, pursuant to the statute, on the 2d of March, 1840.

On the 20th day of October following, and during the pen-dency of that suit, the complainants purchased of J. R. Stuy-vesant the judgment in question.

They cannot complain of want of notice of Mr. Loomis's claim. Aside from the effect of the *lis pendens*, they had actual notice that the mortgage was executed for the same debt which was secured by the judgment. If they had followed up that information by an examination of the records, they would have learned that it was not only executed but had been assigned by J. R. Stuyvesant to Mr. Loomis. And an inquiry made of him, or a search for notices of *lis pendens*, would have led directly to all the information which they now possess. They however relied upon the assurance of J. R. Stuyvesant or those acting in his name, that the mortgage had never been accepted, and they must abide the consequences.

This court is bound to treat the case precisely as if the com-plainants were fully informed of the pending foreclosure, when they received the assignment of the judgment. With or with-out actual notice, they were bound by the pending litigation into which they had purchased. Actual notice would have an im-portant influence upon their efforts to be heard in the litigation.

I need not cite authorities to the point that a purchaser, *pen-dente lite*, will be bound by the decree in the suit; and that the complainant in the suit need not make him a party or otherwise notice his purchase. If he desires to defend the suit, he may make himself a party by a supplemental bill. (1 Daniell's Ch. Pr. 378; *Foster* v. *Deacon*, Madd. & Geld. 59.) And in an ex-treme case, it is probable that this might be done after decree. (See *Milspaugh* v. *McBride*, 7 Paige's R. 509.) But the cir-cumstances of this case would scarcely warrant such leave after decree. The court refused leave to a complainant in *Pendleton* v. *Fay*, 3 Paige's R. 204, where it did not appear that she was ignorant of the matters sought to be set up in the supplemental bill, when she took her decree.

Mr. Loomis's bill was taken as confessed by J. R. Stuyvesant, after an ample opportunity to answer; and on the 3d day of August, 1841, he obtained a decree of foreclosure and sale, which establishes his title to the mortgage, and that the amount of it

is due to him, and expressly forecloses J. R. Stuyvesant and all claiming under him, from all claim and demand to the mortgaged premises.

On the same day that this decree was made, the now complainants applied to the Chancellor by motion in the name and behalf of their assignor, to set aside the default against him, and be let in to defend. This motion was denied by the Chancellor.

In September, 1841, they moved the Chancellor in their own behalf, to be let in to defend the suit under the provisions of the act of 1840, relative to the foreclosure of mortgages in this court. The Chancellor held this motion under advisement, and ultimately denied it in December, 1843. But without awaiting his decision, the complainants filed this bill, in which they ask to have Mr. Loomis's mortgage declared void and inoperative, *ab initio*, that the judgment be declared a valid lien, and superior to his claim under the mortgage, and that the execution of the decree be perpetually stayed.

This certainly, is an anomalous suit. It is not in form or effect a bill of review, for that lies only after enrolment and for error apparent on the decree, or pre-existing matter which was discovered after the decree. Nor is it a bill in the nature of a bill of review, for that must be exhibited before the decree has been enrolled.(*a*)

If it belonged properly to either class, my impression is that the objections taken by the defendants because of the omission to obtain leave, and to make the deposit, &c., should have been presented at an earlier stage of the suit.

The attempt made by the bill, is to litigate anew the subject matter of the former suit, and by another decree virtually to set aside and annul the decree made by the Chancellor.

It appears to me that there are some insuperable objections to such a bill in this case. The Chancellor decided upon their last motion in the suit of Loomis against Stuyvesant, that the proper course of the Greenwich Bank was to have made themselves parties to that suit by a bill.(*b*)

(*a*) See *Hollingsworth* v. *McDonald*, 2 Harr. & John. 230.
(*b*) Now reported, 10 Paige's R. 490.

As that motion was for such other order as the court might deem proper to grant, I must consider the Chancellor's decision as being against granting the bank leave to file a supplemental bill.

Thus it is apparent that the present complainants were not entitled to pursue their supposed remedy, except by a supplemental bill making themselves parties to the former suit, and of course, while the suit was pending; and that they made the attempt to become parties after the decree, and their application was denied by the Chancellor. This of itself is decisive against the complainants' bill.

But if it were competent for the complainants to defend the former suit by a new one, in the manner here attempted, they meet with another formidable difficulty. In making the decree which they ask in their bill, I must wholly overthrow the decree made by the Chancellor in the former suit. His decree adjudges that the mortgage is a valid lien. I am asked to adjudge that it never was a lien. His decree declares that the whole amount of the mortgage debt is due to Mr. Loomis. The bank claims a decree in this suit that it is due and belongs to them. The Chancellor forecloses J. R. Stuyvesant, and also the Greenwich Bank under the designation of persons claiming under him subsequent to the commencement of Loomis's suit, from all equity of redemption and claim in the mortgaged premises. I am asked to decree on the contrary, that he had and the bank now has, a prior claim to the same premises.

This would just as directly and effectually discharge or reverse the Chancellor's decree, as if I should make an order to that effect in express words.

The statute positively forbids a Vice-Chancellor from discharging, reversing, or altering, any decree, order or act, made or done by the Chancellor. (2 R. S. 168, § 3.) Independent of any statute, such a proceeding by an inferior judge, would be so unseemly as well as repugnant to all notions of order, that it could never be upheld. There is no statute inhibiting the Master of the Rolls in England from such an act, and he used frequently to sit for the Chancellor; but Lord Eldon said in *Saunders* v. *King*, 2 J. & W. 429, that the Master of the Rolls

never thought of altering or discharging the orders made by the Chancellor.

In *Lyon* v. *Merritt*, 6 Paige's R. 473, the Chancellor decided that he could not modify his own decree, where by an appeal and affirmance it had been made a decree of the Court for the Correction of Errors.

So between co-ordinate Vice-Chancellors. In *Astor* v. *Ward*, 3 Edw. Ch. R. 371, the Vice-Chancellor refused to modify or interfere with a decree made by my predecessor.

The statute creating the office of Vice-Chancellor of England, (53 Geo. III. ch. 24,) prohibited that officer from discharging reversing or altering, any decree, order, act, matter or thing, made or done, by any Lord Chancellor or Master of the Rolls. In the case of *Saunders* v. *King*, just cited, the Chancellor had made an order for a receiver. By consent, a motion to discharge that order was heard before the Vice-Chancellor, who decided that it ought not to be discharged, but at the same time made an order giving liberty to the defendants to propose themselves before the master as receivers. The Chancellor, on a motion to discharge the latter order, held that the Vice-Chancellor had no authority to make it, and he set it aside. He expressed his doubt whether consent of parties would give the Vice-Chancellor any authority to hear such a motion.

And in *Whitehouse* v. *Hickman*, 1 Sim. & Stu. 102, the same was decided by the Vice-Chancellor himself, on an application to vary an order made at the Rolls. (See also *Brooks* v. *Purton*, 4 Beav. 494; *Robinson* v. *Milner*, 5 ibid. 49; *Earl of Glengall* v. *Bland*, 1 Hare's R. 624.)

I am confident that I have no jurisdiction to make such a decree as is asked by this bill, or any other which would relieve the complainants.

The merits of the case were fully argued, and as my judgment upon them is made up, I ought not to withhold it in deciding the cause.

My conclusions will be stated very briefly. The assent of J. R. Stuyvesant to accept the mortgage is to be presumed from the facts. He knew of its execution, he did not expressly dissent, and it was for his benefit. It did not prevent his taking a judgment and thereby increasing the extent of his lien.

The assignment of the mortgage is conclusive upon him and the bank deriving title to the debt from him subsequently, that he did accept the mortgage before his judgment became a lien.

The transaction in assigning the mortgage to Mr. Loomis was absurd and indeed inexplicable, unless the object were to enable him to use it to perfect his title to the mortgaged premises. It was undoubtedly supposed by the parties, that this could be accomplished without diminishing the debt secured by the mortgage, and the latter would remain by force of the judgment a lien on other lands of Peter Stuyvesant, just as available to J. R. Stuyvesant as if he had never assigned the mortgage.

The complainants therefore never acquired any right to enforce the debt against the mortgaged premises. They received the transfer of the judgment, in effect for a precedent debt, and with constructive notice of Mr. Loomis's rights. They are not therefore in a condition to rely upon the want of consideration in J. R. Stuyvesant's assignment to him. As to that consideration, the testimony is certainly confused, but I think that it is fairly proved to have been the advances which Loomis agreed to make for Peter Stuyvesant, on the faith of the property as represented to Loomis by Van Rensselaer.

Without regard to the consideration, the mortgage having been executed to secure the same debt, the judgment never could be enforced against the mortgaged premises. The bank did not buy the mortgage and they do not claim that the assignment of the judgment drew the mortgage with it. They stand upon the judgment, and have sold the premises under it. The law is positive that they thereby acquired no title. (2 R. S. 368, § 31 ; *Shottenkirk* v. *Wheeler*, 3 J. C. R. 275.) And it makes no difference that the judgment was not recovered on the bond accompanying the mortgage, so long as it was recovered for the debt secured by the mortgage. ( *The North River Bank* v. *Rogers*, 8 Paige's R. 648 ; and *Shufelt* v. *Shufelt*, 9 ibid. 137, are analogous in principle.)(*a*)

---

(*a*) To the same effect are the following cases since reported. *Loomis* v. *Stuyvesant*, 10 Paige, 490, before referred to, and *Delaplaine* v. *Hitchcock*, 6 Hill, 14.

The Chancellor's opinion on the motion made by the bank in the former suit, although founded upon affidavits, and therefore not on the same testimony or identical facts as are now presented to the court, fully corroborates my conclusions upon the merits of the case.

On these grounds I think that the complainants are not entitled to any relief in this suit, and their bill must be dismissed with costs.