Nov. 20. Bosworth, J.,
now delivered the judgment of the Court, and after stating the facts, proceeded as follows;
Murray Hoffman, Esq., the referee to whom the action was referred, decided, on these facts, that the securities in which the surplus was invested must be regarded as real estate for the purposes of descent and devolution, and, therefore, belonged to the plaintiffs, his maternal aunts. A judgment was entered on the report directing the moneys in the defendant’s hands to be paid to the plaintiffs-. The defendant appeals from the judgment, and the question presented on the appeal is, were these securities, on the death of Charles Henry Willis, to be regarded as real, or, as between his heirs and next of kin, as personal estate?
On the part of the plaintiffs it is contended that the fund, being the proceeds of real estate belonging to an infant, will be treated as. land, until some one entitled to it, and of legal capacity, shall elect to take it as money. ,
That the court had no power to decree a sale, for the purposes of conversion, of more of the land than was sufficient to pay the mortgage debt, and costs of the suit; and that having sold the whole, as a matter of necessity, the premises being a single lot, the character of the surplus was not and could not be changed into personalty by the court, but that it was held by the- court as a resulting trust until his death, on which event it descended to his heirs-at-law, as if it had. actually remained real estate.
On the other hand, the defendant insists that the realty having been actually-converted into money in the life-time of Charles Henry Willis, by a court of competent authority in the legitimate exercise of its powers, and in pursuance of a contract made by the ancestor of the estate, and subject to which it *301 had descended to the latter, the surplus, at the time it arose, and the right of Charles Henry Willis to it was determined, belonged to him as the owner of the land which had produced it, but that it belonged to him as money and not as land. That the claims made to it, by his heirs and next of kin, must be determined by the actual character of the property as it existed at his death, and not by the character of the property which had produced it. That, having been lawfully converted into personal property in his lifetime, and being actually such at the time of his death, it must be distributed as personal property, and therefore belongs to John Willis, the paternal grandfather, who was the next of kin.
The argument in support of the plaintiff’s proposition is based partly on the principle established by a long series of decisions in cases arising under wills, by which it is settled that land devised to be sold and turned into money, is treated as money, and money bequeathed to be invested in land, is treated as land, and will descend as such, until some one entitled to it in his own right and capable of electing, has manifested an intention to receive it in the form and character in which it actually exists. Courts of equity treat such property for most purposes precisely as if the directions contained in the will, or the terms of an ancestor’s contract respecting the property, if the rights of parties depend on such a contract, had been specifically executed.
They regard the substance, and not the forms of agreements and other instruments, and will give them the precise effect which the parties intended, and in furtherance of, and for the purpose of executing such intention.
When a Court of Equity is required to determine between persons claiming such property by the right of succession, it treats it as property impressed by the will or act of the party who is the ultimate source of title, with a specific character different from that in which it is found, and disposes of it as continuing to possess that character, until some one entitled to the whole beneficial interest has elected to take it in the form in which it is found, or has received it under a performance of the contract, or in execution of the provisions of the will by which the original right to it was created,
*302 Crag v. Leslie, 3 Wheat. 563; 2 Story’s Equity, §§ 790, 791, 792, and 793, and cases there cited; Law Library, vol. xlix.p. 560, &c.; Stagg, Executor, &c., v. Jackson and Wife, 1 Coms. 206; 7 Hare, 299; Griffith v. Rickets; Same v. Lunell.
It is evident, from these cases, that a Court of Equity will not divest property of the character in which it finds' it, or which it finds impressed upon it, except at the instance of some party having the right to invoke its interposition for such a ■ purpose. The only party who can ask to have this done must be one entitled to the whole beneficial interest in the property, • and who has a right to convert it himself from one form to another, and who is of legal capacity to make an election.
It is the constant rule of Courts' of Equity to hold lands pur- ' chased by the guardian with the infant’s personal estate or with ' the rents and profits of his real estate, to be personal and distributable as such; and, on the'other hand, to treat real property, turned into money, as still for the same purpose real estate. And when the court directs any change of property, it directs the new investment to be made in trust for the benefit of those who would be entitled to it, if it had remained in its original state.
2 Story’s Eq., § 1357.
In Ware v. Polhill (11 Vesey, 278), Lord Eldon said' that such a 'declaration is made because that is the law applicable to the case of an infant. The declaration in the order or decree “ does not create the right, but it is a declaration of a pre-existent right to have the property secured.”
In exporte Phillips (19 Ves. 122, 123), Lord Eldon said:— “ In the case of the infant, it is settled that as a trustee out of court cannot change the nature of the property, so the court, which is only a trustee, must act as the trustee out of court; and finding that a change will be for the benefit of the infant, must so' deal with it as not to affect the powers of the infant over his property even during his infancy, when he has powers over one species of property and not over the other. It may be for the benefit of an infant, in many cases, that money should be laid out in land, if he should live to become adult; but if. not, it is a great prejudice to him, taking away his dominion, by the power of disposition he has over personal property, so long *303 before he has it over real estate. The court, therefore, with reference to his situation, even during infancy, as to his powers over property, works the change, not to all intents and purposes, but with this qualification, that, if he lives, he may take it as real estate, but without prejudice to his right over it, during infancy, as personal property.”
If this surplus was personal estate for all purposes, from the moment of the sale, the infant might have disposed of it by a will in writing at any time after he became eighteen years of age (2 R. S. 60, § 21). He had attained that age before he died.
If it is to be treated as real estate, he could not devise it until after he attained the age of twenty-one years (2 R. S. 57, § 1).
Hence, it is obvious that section 180 of the statute entitled “ of proceedings in relation to the conveyance of lands by infants, and the sale and disposition of their .estates,” was merely declaratory of what was deemed to be a well settled principle of equity jurisprudence. That section declares that no sale made pursuant to that act, “ of the real estate of any infant, shall give to such infant any greater or other interest or estate in the proceeds of such sale than he had in the estate so sold, but the said proceeds shall be deemed real estate of the same nature as the property sold.”
In' this case the infant’s property was not sold under this act. It was sold as a matter of necessity, as the mortgaged property was a single lot. It was real estate of the infant when the law, through the interposition of the Court of Chancery, began to operate upon it. It was no part of the object or purpose of the foreclosure suit to. affect the estate of the infant or the nature of his property, or his power of disposition over it during his infancy. The sole purpose and object were to sell enough to pay the mortgage debt and costs of the suit. If enough and no more could have been sold separately, to satisfy that object, without any prejudice to the owners of the equity of redemption, only so much would have been sold, and the residue, which would have belonged solely to the infant on the death of his father, would have been real estate in which he would have had an absolute estate in fee simple. But having regard to his interests it became necessary to sell the whole premises. Having sold the whole, the court which ordered the sale will *304 hold so much of the surplus as represents the infant’s interest and estate, as real estate until he becomes of age, or will dispose of it as such if he dies before that event happens.
In Moris et al. v. Murgatroyd, et al. (1 J. Ch. R. 119-130), Chancellor Kent held, in a case of a surplus arising from a sale of mortgaged premises, which took place after the death of the mortgagor intestate, and while some of his heirs were infants, that the surplus was part of the real estate, would go to their . heirs, and would be assets in their hands. And although the court applied the surplus to pay debts of the mortgagor .on account of Ms personal estate being insufficient for the purpose, it refused to allow his administrator to .distribute it as personal estate, in which event it would have been absorbed, as the law then was, in paying a judgment which had been confessed by the administrator, but treated ■ the surplus as equitable assets, and distributed them as such, ratably among all the creditors.
The case of Lloyd v. Hart, Admin. &c. of Evans (2 Barr, 473), is a recent one, and was fully considered. If correctly decided, the principle involved in the .decision is conclusive as to the rights of the parties in this case. A sale of the real estate of 'a lunatic was ordered for the purpose of paying his debts, and - was made by his committee pursuant to an order of court, and there was a surplus of over $3,000. ■
After his death there was. a contest between Ms heirs and next of kin in relation to the surplus, and each claimed it. The court below held that it was to be treated as personalty, and that it belonged to the next of kin. -It rested its decision on the principle, contended for by the defendant in this case ; that the conversion had been made by order of a- court of competent authority, and, therefore, could not be taken to be a wrongful conversion-; that the heir had no such equity as would induce the court to inqmre into the origin of the fund; that the parties claiming it must take it as they found it at the time of the death of the intestate.
The act of the Legislature which authorized the sale was silent as to the consequences of a conversion, and made no provision whether the surplus, if any arose, should be deemed personal or real estate.
*305 A writ of error was brought, and the judgment below reversed. The court, after adverting to the leading cases of conversions directed by wills, said that, “ from these it appears that the equitable character of the property when legally converted, depends on the will of the devisor collected from the purpose to be answered by it; but the committee had, in this instance, no will to exercise or power to convert, as a devisor has, from motives of mere caprice, or for any motóme not authorized by statute. The sale was for the maintenance of the lunatic and payment of his debts. Consequently what remained when that was accomplished, retained the impress of real estate.”
(See 2d Yeates R. 261; Deller v. Young in re Tilghman, 5; Wharton, 64; Scull v. Jamegan, 2; 2 Dev. and Bat. Eq. R. 144.)
March v. Berrier (6 Iredell’s Eq. R. 524) was decided by the Supreme Court of N. C. in 1850. It related to a surplus produced by the sale of land which had descended to an infant. The sale was made under the decree of a Court of Equity, to create funds to pay debts owing by one Wilson, the intestate, who died seized of the lands. The sale was made in the lifetime of the infant, and a surplus of $639 64 was actually paid by the clerk and master, who made the sale, to the guardian of the infant. The infant afterwards died under age and unmarried. A bill was filed by her heirs at law to procure a decree that this surplus be deemed land and be paid to them, and a decree to that effect was made.
The court in its opinion said that, “ when a Court of Equity orders a sale of the real estate of an infant, in order to raise money for a particular purpose, it would not, upon its own principles and independent of any provision by statute, allow its decree to affect the rights of succession to a surplus remaining after answering that purpose. The money stands for the land of which it was the proceeds.”
That the fact that the surplus had been paid to the infant’s guardian made no difference, The acts of that person, or the dealings between him and the infant’s administrator, could not change the equitable nature of the fund so as to disturb the rights of the heirs at law. The court decided that the interest which had accrued during the infant’s life-time was personalty, *306 but that the capital and interest that accrued thereon subsequent to her death belonged to the heirs at law.
The purpose of the sale, in the present case, was to satisfy the mortgage debt and the costs of the foreclosure suit. Except as a matter of necessity, the court would not have converted into personalty more of the premises than was sufficient to answer that purpose. That purpose was fully answered by the application of a part of the proceeds.
The principles upon which the court acts, and by which it is governed, will not allow it to regard the surplus as property of a different nature from that which produced it. If land has been converted, it will treat the proceeds as land, until the infant is capable of electing and actually elects to take it as money. .
If a different rule obtained, the infant, in this case, as he lived until he attained the age of eighteen years, might have bequeathed it as money. If it had not been converted, he could not have devised it until after he was of full age. So, on the other hand, if his money is ordered to be invested in real estate and is so invested, the court will treat the land as money. On any other principle the act of the court would deprive him of a right, created by statute law, to bequeathe his personalty on attaining the age of eighteen years. I am inclined to think that the true ground of the rule is the one stated by Lord Eldon in ex^parte Phillips, and that it is not based upon any supposed equity of the next of kin to succeed to the personal and of the heirs to take the real estate, and to have it retain the character it possessed when the infant’s title accrued, until his death, or until he becomes of age.
But whatever may be the true reason of the rule, Courts of Equity seem to have acted uniformly upon the principle that, in converting the real estate of an infant for a particular pm’pose, they had no power to convert, to all intents and purposes, any more than was required to answer such purpose. And that if incidentally it necessarily happened that more was converted, it was their duty to treat the excess or surplus as property of the same nature as that converted, and to dispose of it accordingly among those claiming by the rights of succession.
*307 We regard this principle to he well settled, and that § 186 of 2 R. S. 195, is but a legislative declaration of this principle. That it must be applied and enforced in all cases of a surplus arising from a sale of his lands under the decree of a court, as well as where a sale is made for either of the purposes Specified in that‘act.
The only case cited apparently in conflict with the rule and the decisions referred to, is that of Bogart v. Freeman, 10 Paige 492. That was a contest in relation to a surplus arising from a sale under a decree of foreclosure. The report of the case states that “ E. Freeman, the elder, widow of the mortgagor (who died before thé sale), was grantee in fee of the mortgaged premises,” when the decree was entered. “ But in fact she was only entitled to dower in the equity of redemption. She held the residue in trust,” one eighth thereof for each of her seven children, and one sixteenth for each of two grandchildren. After her death there was a litigation respecting the surplus. The Chancellor, assuming that certain of the children and grandchildren, who were dead, had died infants, decreed that their shares of the surplus must be deemed personal and not real estate, and that they belonged to their next of Mn.
No authority is cited in support of the proposition. It does not appear from the report what was the nature of the trust, nor whether the instrument by which it was created did not direct the land to be sold after her death, and the proceeds divided as money between the children and grandchildren. If such was the fact, the decision was in harmony with the well settled rules relating to equitable conversion. There is nothing in the facts stated which makes it necessarily conflict with the authorities cited.
In Graham v. Dickinson (3 Barb. Ch. 169), real estate devised was sold after the death of the testator to supply a deficiency in his personal estate. One seventh of the land so sold belonged to the complainant’s wife as such devisee.' Sufficient of the proceeds was applied to pay the debts, and the residue was paid over to the devisees. Hence the whole proceeds were actually disposed of. Complainant’s wife subsequently died without having had any issue, and he was appointed administrator of her estate.
*308 Subsequently to her death, the executors of her father’s estate realized a large sum of money from a claim of the estate against the French Government, and the complainant filed a bill, as administrator of his wife, to recover one seventh of this fund, as a substitute for part of her real estate which had been sold to pay debts primarily chargeable upon the testator’s personal estate.
' The executors resisted the claim on the ground that the fund was to be considered real estate at the time of the death of complainant’s wife, and that it belonged to her heirs at law, and not to her personal representatives. The chancellor decided that the fund must be treated as personalty, and that it belonged to the plaintiff as administrator.
The report of the case states expressly that it did not appear by the pleadings or proofs in the cause whether the marriage of complainant took place before or after the sale of the real estate of his wife. FTeither does it appear that she was then under age. If of full age and a feme sole, and nothing to the contrary appears, then the decision is in harmony with all the eases which hold that where real estate is converted by operation of law, in the lifetime of an adult owner, the surplus, if there be any, will be treated as money, and at his death will be distributed as such. (Banks et al. v. Scott, 5 Mad. 500; Dixon v. Dawson, 2 Sim. and Stew. 327, 329; Flanagan v. Flanagan, Law Lib. p. 578; and what Lord Eldon, in his argument in Achroyd v. Smithson, says of the grounds on which the former was decided.)
Graham v. Dickinson (p. 184) is in conflict with all the authorities, if it is to be deemed a decision that the rule which it asserts applies to a surplus arising from the sale of an infant’s real estate. As the report of the case does not state that 'the heir was either an infant or married at the time of the sale, and as no authorities were cited applicable to a surplus arising from the sale of an infant’s land, it cannot be said to decide a question that does not appear to have arisen or been discussed.
We are of the opinion that there is nothing decided in either of those cases at variance with the rule uniformly acted upon by courts-of equity,—that a surplus arising under such circumstances as this must be treated as land, until the infant to whom *309 it belongs has reached an age at which he is capable of taking it as money, and has elected so to take it. Up to the time of his death, he was in law incapable of making an election. It must, therefore, be regarded and disposed of as it Would have been if it were in fact land. We concur in the opinion that the referee decided the law correctly. The judgment appealed from must be affirmed.